In the Matter of JOSEPHINE CUPO, Appellant, v. JOSEPH D. Mc-GOLDRICK, as State Rent Administrator, Respondent.

First Department, March 27, 1951.

*Garry J. Fury* for appellant.

*Emory Gardiner* of counsel (*Nathaniel L. Goldstein, Attorney-General*), for respondent.

VAN VOORHIS, J. This proceeding is brought under article 78 of the Civil Practice Act to review a determination of the State Rent Administrator. Appellant owns a two-story house at 3338 Eastchester Road, Bronx, N. Y. She lives upon the fourth floor of a walk-up tenement, but applied to the Administrator on June 13, 1950, for a certificate of eviction of a tenant upon the ground floor of her own house, on the basis that she requires his space for her personal use and occupancy because of an immediate and compelling necessity.

In support of this application, she submitted an affidavit by her personal physician stating that she has been under his care for the past year on account of enlargement of her heart, and certifying " That she is unable to climb stairs and that she has been advised to move into a ground floor apartment, as climbing stairs will become increasingly dangerous to her health.''

The tenant answered on June 29, 1950, alleging that petitioner was not acting in good faith, and that there was no immediate and compelling necessity.

On June 30, 1950, in response to a communication by telephone from the tenant's attorney, petitioner's attorney agreed in writing that petitioner would submit to a physical examination by the tenant's doctor, the time and place for the examination to be determined later. Petitioner states that she held herself in readiness for such an examination, but that the tenant and his attorney failed or refused to apply for an appointment. The tenant asserts that the physical examination was not conducted due to failure of petitioner to keep an appointment that had been made.

A hearing was held by the Local Rent Administrator on July 29, 1950, at which both parties and their attorneys appeared and presented their rival explanations why no physical examination had been had by the tenant's examining physician. On August 3, 1950, the Local Rent Administrator granted petitioner an order of eviction, containing a waiting period of three months. On September 9, 1950, the tenant filed a protest against the order of eviction, ostensibly in compliance with the statute (L. 1950, ch. 250, § 8, subd. 1), although more than thirty days had elapsed after the effective date of the order of eviction in violation of subdivision 2 of section 92 of the Rent and Eviction Regulations of the Temporary State Housing Rent Commission. On November 28, 1950, the State Rent Administrator (hereinafter called the Administrator) denied this protest on the merits, and affirmed the order of the Local Rent Administrator granting petitioner a certificate of eviction, in an opinion in which he stated that he had carefully reviewed all of the evidence in the record and considered the matter *de novo*, and that he had concluded that there was and is an immediate and compelling necessity warranting the issuance of a certificate of eviction. On December 1, 1950, the tenant commenced an article 78 proceeding to review the Administrator's order denying his protest, which apparently is still pending.

About seven days later and on December 8, 1950, before such proceeding was heard, the State Rent Administrator, on his own motion and without notice to the parties and without further proof or hearing, rescinded his own determination and remanded the matter to the Local Rent Administrator for a further hearing, in order that the tenant might have another opportunity of having petitioner examined by his doctor. The Administrator's answer in the instant proceeding indicates that he did this upon

an ex parte statement by the tenant that petitioner had been seen by the tenant climbing the stairs unnecessarily, which appeared to the tenant inconsistent with her having a heart ailment. Meantime, petitioner had commenced dispossess proceedings in the Municipal Court based upon the Administrator's certificate of eviction, which have not been brought to trial on account of the Administrator's act in rescinding his certificate.

Petitioner thereafter commenced this article 78 proceeding to review and annul the order of December 8, 1950, by which the Administrator reversed his previous final determination of November 28, 1950, which had granted the certificate of eviction. After this proceeding had been noticed for argument at Special Term, the Administrator made a cross motion under section 1293 of the Civil Practice Act for an order dismissing the petition as insufficient in law. This cross motion was based upon the contention that petitioner had not exhausted all administrative remedies before applying to the Supreme Court under article 78, in that she had not filed a protest under subdivision 1 of section 8 of the Emergency Housing Rent Control Law, so as again to come before the Administrator in an endeavor to persuade him to rescind his order of December 8, 1950, which had rescinded his prior order of November 28, 1950, that had granted to petitioner a certificate of eviction. The cross motion was argued prior to the argument on the merits of this article 78 proceeding, and resulted in an order denying the cross motion and overruling the Administrator's objections in point of law. Thereafter petitioner's application was argued on the merits at another Special Term, which resulted in the order presently appealed from, which dismissed petitioner's article 78 proceeding. The court stated in an accompanying memorandum: " The papers fail to disclose that the commission was arbitrary, capricious or unreasonable." The commission and the State Rent Administrator are the same.

The appeal now before the court is thus from an order dismissing an article 78 proceeding, instituted to annul a determination by the Administrator which rescinded his previous order, that, in turn, had granted a certificate of eviction which authorized petitioner to start summary dispossess proceedings in the Municipal Court to obtain possession of a ground floor apartment in her own tenement house, for which she applied eight months ago on account of immediate and compelling necessity found to have arisen from heart disease.

A recital of this complex procedure illustrates the reason for the traditional rule regarding finality of decisions, not only

by courts, but also by quasi-judicial and administrative bodies and officers. This subject was recently considered in *Matter of D & D Realty Corp.* v. *Coster* (277 App. Div. 668) concerning the former Temporary City Housing Rent Commission of the City of New York. This court there (p. 671) quoted from *People ex rel. Finnegan* v. *McBride* (226 N. Y. 252) that "Public officers or agents who exercise judgment and discretion in the performance of their duties may not revoke their determinations nor review their own orders once properly and finally made, however much they may have erred in judgment on the facts, even though injustice is the result. A mere change of mind is insufficient. Further action must, where power is not entirely spent, be for cause, with good reasons and proper motives for the correction of improper action." The latter statement was defined as meaning: "Error may be corrected by setting it aside if it was the result of illegality, irregularity in vital matters, or fraud." That statement was made regarding determinations of administrative bodies. Other cases ascribing finality to decisions by courts are *Herpe* v. *Herpe* (225 N. Y. 323) and *Corr* v. *Hoffman* (256 N. Y. 254).

This record discloses no legal basis for revocation of the certificate of eviction. Before the certificate was issued, it lay within the discretion of the State or Local Administrator to adjourn the hearing in order to enable the tenant to conduct a physical examination; but having declined to do so, the issuance of the eviction certificate on the affidavit of petitioner's personal physician was not an irregularity in a matter so vital as to empower the Administrator to recall the decision. The ex parte statement of the tenant that he had seen petitioner unnecessarily climbing the stairs, supplies none of the requisites for a reconsideration upon the ground of newly discovered evidence. On such a basis, there would never be an end to administrative procedure or litigation.

The argument is made by counsel for the Administrator, that section 8 of the Emergency Housing Rent Control Law deprives his determinations of all finality, and empowers him to modify or rescind his orders after they have been issued and acted upon, merely for the reason that he has changed his mind. Such a power, unsettling the rights of both landlords and tenants contrary to the usual conception of orderly procedure, is sought to be spelled out of this section, entitled "Judicial Review", which states in part that "Any person who is aggrieved by the denial or partial denial of his protest may, in accordance with article seventy-eight of the civil practice act, within thirty days

after such denial, file a petition with the supreme court specifying his objections and praying that the regulation or order protested be enjoined or set aside in whole or in part.   *   *   * Upon the filing of such petition the court shall have jurisdiction to set aside such regulation or order, in whole or in part, to dismiss the petition, or to remit the proceeding to the commission; provided, however, that the regulation or order may be modified or rescinded by the commission at any time notwithstanding the pendency of such proceeding for review.''

The last clause was not intended, we think, to confer power upon the Administrator (who is also described as '' the commission '' in the statute) to alter or revoke prior determinations, in excess of the power that was reserved to him in the contingencies stated in the opinion by Judge Pound in *People ex rel. Finnegan* v. *McBride* (226 N. Y. 252, *supra*). The purpose of the qualifying clause which reads, '' provided, however, that the regulation or order may be modified or rescinded by the commission at any time notwithstanding the pendency of such proceeding for review '', was to prevent these limited reserve powers of the Administrator from being divested by the pendency of an article 78 proceeding in the Supreme Court. With such a proceeding to review pending, analogous to review by appeal, there would have been serious doubt that the Administrator, in the exercise of such reserve power, could have modified or rescinded an order previously made by him while it was being reviewed in court, under the well-known rule that, after an appeal has been perfected and while it is pending, there is no authority in the lower court or tribunal to act within the scope of the power of the appellate tribunal. The question has usually arisen over the power of the Supreme Court to act after an appeal has been taken to the Court of Appeals. The lower court may correct the record (*Jaffe* v. *Sonntag*, 221 N. Y. 572), or grant a new trial on account of matters dehors the record, such as newly discovered evidence (*Kirkpatrick Home for Childless Women* v. *Kenyon*, 209 App. Div. 179), but may not trespass on the jurisdiction of the appellate court while the appeal is pending before it. The Court of Appeals stated in *Parks* v. *Murray* (109 N. Y. 646): '' The Code provides explicitly that when those acts are done the appeal is perfected. (Sec. 1326.) Thence forward the jurisdiction of this court attaches and the authority of the Supreme Court, *except as specially preserved,* ends.'' (Italics supplied.) The reservation of power in the Administrator to modify or rescind during the pendency of review in article 78 proceedings, was evidently

adopted in the light of this doctrine. Such power to modify or rescind as the Administrator would otherwise possess, was " specially preserved " by this statute even while his determination is under review in the Supreme Court. The thought was evidently that emergency situations might arise, which would be best met by quick action by the Administrator before the termination of pending court proceedings under article 78. See, also, *People ex rel. Hoffman* v. *Board of Education* (141 N. Y. 86); *Henry* v. *Allen* (147 N. Y. 346), and *Howey* v. *Lake Shore & M. S. Ry. Co.* (15 Misc. 526, 529) which cites many cases and concludes that " all matters relating to the appeal itself and its disposition come under the control of the appellate court ", divesting *pro tanto* the power of the body or court whose determination is being reviewed.

The dominant purpose of section 8 of the rent control law was to provide for judicial review, as indicated in the title, and not to enlarge the powers of the Administrator over his own decisions after they have been made. The instant case does not fall within the limited powers reserved to the Administrator under general principles of law to alter or revoke final determinations.

The order appealed from should be reversed, with $20 costs and printing disbursements, and a final order should be entered in favor of petitioner annulling the revocation by the State Rent Administrator of the certificate of eviction previously issued. Settle order.

PECK, P. J., COHN, CALLAHAN and HEFFERNAN, JJ., concur.

Order unanimously reversed, with $20 costs and printing disbursements and a final order is directed to be entered in favor of petitioner annulling the revocation by the State Rent Administrator of the certificate of eviction previously issued. Settle order on notice.