Matthew M. Levy, J.
Petitioner is a corporation organized and authorized to do business in New York State. It has been licensed, since August 11, 1954, to sell alcoholic beverages at retail for consumption off the premises at 566 Pennsylvania Avenue, Brooklyn, New York. Pursuant to article 78 of the Civil Practice Act and subdivision 6 of section 121 of the Alcoholic Beverage Control Law, the petitioner has brought two proceedings to have the determinations of the respondents (individual members of the State Liquor Authority and the State Liquor Authority itself) reviewed judicially so as to have the court annul the respondents’ refusal to approve the petitioner’s application to transfer its license from the Brooklyn address to 300 *770 West 153rd Street, Manhattan, or in the alternative to 104 West 113th Street, Manhattan, or in the further alternative to 270 West 153rd Street, Manhattan, and to have the court order the respondents to approve at least one of the applications for transfer.
The facts appear to be somewhat involved, and I shall endeavor to narrate them simply. But even before the factual background of the present two proceedings is revealed, it is necessary to take note of an intermediate order, dated October 5,1955, which granted the respondents’ motion to strike certain portions of the original petition. That petition sought to treat in one proceeding all of the petitioner’s requests, to change location. The result of this order was to require the-petitioner to serve an amended petition, omitting any reference to the 113th Street application and confining its scope to the 153rd Street applications. Accordingly, a separate proceeding was instituted to review the respondents’ actions relating to the 113th Street application. However, the two motions to overcome the respondents’ refusals to permit the petitioner to move its license to various locations in Manhattan were presented to me at the same time, and will here be disposed of together.
On April 1, 1955, the petitioner filed an application with the New York City Alcoholic Beverage Control Board to transfer its license to 300 West 153rd Street near Eighth Avenue in the borough of Manhattan. The petitioner states that, on the same day that it filed this application, a sign was placed on the fence surrounding an empty lot located, within 200 feet of 300 West 153rd Street, announcing that the Bethany Baptist Church intended to erect a structure upon the lot, to be completed in September of 1955. On April 27, 1955, the city board disapproved the application. On April 29, 1955, an alternative application was filed by the petitioner with the city board for permission to transfer its license to the premises of 104 West 113th Street, near the intersection of Lenox Avenue in the borough of Manhattan. Subsequently, on May 18, 1955, this application, too, was forwarded by the city board to the respondents, with a recommendation that it be denied.
On June 8, 1955, the State Liquor Authority, at a regular meeting, considered the petitioner’s applications, the papers annexed to them, the recommendations of the city board, the report of the respondents’ investigator and all other relevant papers; and, after such consideration, the Authority determined that the applications should be disapproved. Under date of June 9, 1955, the respondents informed the petitioner that both of its applications had been disapproved. In each instance the *771 respondents assigned two reasons for their action, the first reason being the same in each case, as follows: “ 1. The Authority finds that the licensees, as recent purchasers, have not been operating the licensed premises for a sufficient period of time to enable them to show a bona fide effort to serve public convenience and advantage in their present location and, accordingly, they have failed to establish to the satisfaction of the Authority that public convenience and advantage at their present location would be served by granting this application to remove from the present premises. ”
The second reason' assigned by the respondents for the refusal with respect to the 153rd Street application reads as follows: “ 2. The applicants have failed to establish that public convenience will be served by permitting the removal of its present store to the proposed location since the applied for premises is on the same side* of the street and within 200 feet of a building which, when completed, will be used as a church. ” The second reason assigned by the respondents for the refusal with respect to the 113th Street application reads as follows: “ 2. Premises applied for are in close proximity to existing liquor store located at 101 West 114th St., a distance of approximately 328 feet; 31 Lenox Avenue, a distance of approximately 756 feet; and 63 St. Nicholas Avenue, a distance of approximately 477 feet, and, therefore, public convenience and advantage would not be served by granting a license for an additional liquor store at the location applied for.”
It is now necessary to take a detour in the narration of the facts so as to bring into focus what appears to be a crucial factor in the matter and an important actor in the picture. Rule 39 of the Rules of the State Liquor Authority (N. Y. Off. Comp. of Codes, Rules & Regulations [10th Supp.], p. 186) was first promulgated in 1953, and provided for certain limitations on removals of licensed premises. As amended, it provides among other things that
“ Now, therefore, be it resolved and ordered
‘‘ That petitions for removal of any premises licensed to sell liquor and/or wine for off-premises consumption located outside of New York City shall be accepted by the respective local boards on a continuing basis, and it is further
‘‘ Resolved and ordered, that commencing on April 1, 1955 and continuing to and including April 30, 1955, petitions for *772 removal of any premises licensed to sell liquor and/or wine for off-premises consumption located within New York City shall be accepted by the New York City Alcoholic Beverage Control Board or office of the Authority, and it is further
“ Resolved and ordered, that the moratorium presently in effect for the period between June 1, 1954, and March 31, 1955, inclusive, pursuant to rule 39 of the rules of the State Liquor Authority, be and the same is hereby continued and extended so as to remain effective on removal of such licensed premises located within New York City for the additional period between May 1, 1955, and March 31, 1956, inclusive, and it is ordered that during the periods of time specified, no application for the removal of any premises licensed to sell liquor and/or wine for off-premises consumption located within New York City shall be accepted by the New York City Alcoholic Beverage Control Board, except that the New York City Alcoholic Beverage Control Board may accept any such application where in its judgment such licensee can reasonably be expected to continue to serve substantially the same persons who patronize the premises where presently located, and except that to prevent undue hardship, or for good cause shown, the Authority may at any time authorize, in writing, the acceptance of any application where the licensee seeks to remove the licensed premises outside the neighborhood where presently located, but within the territorial limits of the City of New York.” (Added June 10,1953, eff. June 18,1953; amended Feb. 16,1954; Sept. 3,1954.)
In December, 1954, the respondents had granted to another licensee, Myrtle Wine and Liquor Store, Inc., of 2 Myrtle Avenue, Brooklyn, a waiver of that rule, for the reason that Myrtle had been evicted from the premises it then occupied as a result of condemnation proceedings, and was without any place of business. Under the authorization thus granted, this licensee, on February 1, 1955, filed an application to move from 2 Myrtle Avenue, Brooklyn, to 100 West 113th Street, Manhattan. This application by Myrtle was disapproved on April 27, 1955, on the ground of proximity to other licensed premises. When the respondents met on June 8, 1955, they reconsidered Myrtle’s application and after such reconsideration, reaffirmed their disapproval of Myrtle’s request because of proximity to other enumerated retail liquor dealers, and Myrtle was informed of the decision accordingly.
Six days later, and on June 14, 1955, the petitioner filed with the respondents an application for reconsideration with respect to the request to remove to West 113th Street. On June 16,1955, the respondents received further requests from Myrtle requesting reconsideration. On June 16,1955, the respondents reviewed *773 all of the papers relevant to both applications. Upon such further reconsideration, the respondents determined that both licensees were entitled to move, and that public convenience and advantage would be served by granting either application. The respondents determined that Myrtle’s application should be the one to be approved, and, as a result, the applications of the petitioner had to be disapproved, due to the proximity of the new Myrtle location. Thus, the respondents again denied both of the petitioner’s applications. The reasons assigned by the respondents for the refusal of the petitioner’s 113th Street application was, on reconsideration, as follows: “ The Authority at its meeting of June 15-16, 1955, upon reconsideration, approved the removal of Myrtle Wine and Liquor Store, Inc. from 2 Myrtle Avenue, Brooklyn 1, N. Y., to premises located at 100 West 113th Street, New York, N. Y. It is therefore mandatory that the Authority disapprove your petition for removal to 104 West 113th Street since your proposed location would be on the same street within fifteen hundred feet of the new location of Myrtle Wine and Liquor Store, Inc., which is prohibited by Section 105 sub. 4 of the Alcoholic Beverage Control Law.” The reason assigned by the respondents for the refusal of the petitioner’s 153rd Street application was, on reconsideration, the same as their second prior reason, to wit: “ The applicants have failed to establish that public convenience will be served by permitting the removal of its present store to the proposed location since the applied for premises is on the same side of the street and within 200 feet of a building which, when completed, will be used as a church.” The Authority also took note of the fact that the petitioner had recently purchased the licensed premises in Brooklyn, from which it seeks to remove, and the Authority expressed serious doubts as to whether the licensee had been operating the business at its present premises in Brooklyn for a sufficient period of time to enable it to demonstrate a bona fide effort to serve public convenience and advantage in its present location.
Thereafter, the petitioner procured an option to lease a store at 270 West 153rd Street, more than 200 feet from the Bethany Baptist Church, then under construction. On August 19, 1955, the petitioner notified the respondents that it had been able to overcome the sole objection to the applications for removal to 153rd Street, that since the premises at 270 West 153rd Street were not on the same block as the church, and the church officials had withdrawn their objections, the respondents were requested to consider this matter in the light of these new facts and to *774 grant the petitioner permission to move to 270 West 153rd Street. By letter dated August 22, 1955, the respondents informed the petitioner’s attorney that the request would be placed on the agenda of the earliest meeting of the full board and that it would be considered at that time. The next meeting was held on September 6-7, 1955, at which time the respondents denied the application to substitute the new location of 270 West 153rd Street for the one which was previously given. The ground of the denial was that to grant the petitioner’s latest request would disrupt the orderly processing of removal applications and that it would be violative of the provisions, spirit and intent of rule 39 of the Rules of the State Liquor Authority, which is said by the respondents (unless special circumstances are shown) to prohibit the filing of removal applications during the period from May 1, 1955, to March 31, 1956, and which requires such removal applications to be filed with the local board.
The petitioner contends that the respondents’ action with respect to the 113th Street application at their meeting of June 15-16, 1955, was invalid as a matter of law for the reason that the respondents (having on June 7-8,1955, duly determined that public convenience would not be served by granting a license for an additional liquor store at the premises applied for because of its close proximity to other liquor stores in that vicinity) could not arbitrarily reverse their determination eight days later as to the convenience of the public in the locality — at least in the absence of newly discovered evidence as to the matter already decided or of any evidence of changed conditions thereafter. The petitioner claims further that such action was discriminatory, and asserts that it did not have (as it should have been afforded) any information concerning the application of the Myrtle Wine and Liquor Store, Inc., inasmuch as the respondents never publicly posted such information or information relating to the waiver of rule 39. The petitioner alleges that it has overcome all of the objections to the final proposed removal by obtaining the new location and-it urges that the court ought to set aside the respondents’ refusal to approve this transfer and to make an order directing the respondents to approve the petitioner’s application.
I shall first consider the propriety of the denial of the transfer of the petitioner’s license to the 300 West 153rd Street address.
The petitioner asserts that the respondents have transcended their statutory authority, and that this is obvious from the fact that they have not predicated their refusal of the transfer of the license to this address upon the mandatory prohibition con *775 tained in the statute. The petitioner points out that subdivision 3 of section 105 of the Alcoholic Beverage Control Law provides, insofar as material, as follows: “No retail license to sell liquor and/or wine for off-premises consumption shall be granted for any premises which shall be located on the same street or avenue, and within two hundred feet of a building occupied exclusively as a school, church, synagogue or other place of worship ”. The argument then proceeds on the contention that, as the statute sets forth certain specific prohibitions with respect to the location of a retail liquor store, any applicant who can demonstrate that he has complied with those requirements cannot be refused a license or the transfer thereof by the State Liquor Authority merely on the basis of the exercise of discretion. This assumes that the respondents have no discretion in these matters and are limited to the requirements described in the statute, and, for present purposes, I shall go along with this assumption, although, as I point out later, I do not agree that it is valid. The petitioner argues that since this section of the act imposes three conditions — (1) the existence of (2) a church building (3) occupied exclusively as a place of worship — and that since it is conceded that there was at that stage no church building in existence and that of course it could not have been occupied at all, much less exclusively for religious worship, there was no valid basis in law upon which the respondents determined that the location requested by the petitioner was tabu.
In support of its argument, the petitioner cites cases which generally required a church building to be completed and used exclusively as a place of worship before a licensee in the neighborhood would be prohibited from engaging in his trade. (Matter of Rupp [King], 54 Misc. 1; Matter of Rupp [Curnen], 55 Misc. 313, affd. 122 App. Div. 891; Matter of Vail [Lennon], 38 Misc. 392; Matter of Finley [Davidson], 58 Misc. 639.) Upon study, it will become apparent that the cases which the petitioner has cited are distinguishable from the present fact situation in that the respective licenseés there had already been in business at the specific locations at the time the question was drawn in issue. The instant case is quite different, inasmuch as the petitioner is still at the location where it began business, and the State Liquor Authority is not here presented with a fait accompli after the licensee has moved. In People ex rel. Sweeney v. Lammerts (18 Misc. 343, 347), also cited by the petitioner, reliance is placed upon a statement to the effect that if the traffic in liquor had continued down to the time of the application, then the faet that a church society owned property upon *776 which no building was erected would not prevent issuance of a liquor license. Even as to this dictum — for that is what it truly is — the facts are different from those in the case at bar; and the court there dismissed a writ of certiorari to review the refusal of a liquor certificate, where there was an abandonment of business premises located within the proscribed proximity to a prospective church building, although upon other grounds.
I have thus undertaken to analyze the cases relied upon by the petitioner because, in their brief, the respondents have not attempted to deny the authority of these precedents. The respondents contend rather that these cases are not applicable because the Authority’s denial of the present petitioner’s application as to this specific location was based upon the permissible exercise of an appropriate discretion. And in this regard, the respondents cite a recent case, Matter of Kaplan v. O’Connell (281 App. Div. 46, affd. 305 N. Y. 850), which indicates that the State Liquor Authority is not limited to the minimal statutory requirements in deciding a question relating to the physical character of a luncheonette desirous of obtaining a license to sell beer. The Appellate Division pointed out that the Legislature had established statutory standards for places selling beverages of higher alcoholic content but had deliberately omitted to do so in the case of the beer licenses, preferring instead to leave such a task to the administrative agency. While this case is clearly distinguishable from the present one, it is precedent for the proposition that the Authority is not limited to the words of the statute. As Mr. Justice Bbeitel there said, for the court: ‘‘ Under section 17 of the Alcoholic Beverage Control Law, the Authority has some discretionary power with respect to the issuance or refusal to issue licenses. To limit the agency to the minimum expressed statutory requirements would frustrate it in effecting the broad policy for which section 2 of the law is a clear expression. ’’ (Matter of Kaplan v. O’Connell, 281 App. Div. 46, 48, supra.)
The statute involved in the instant case plainly states that a license shall not be transferred ‘‘ to any other premises * * * except in the discretion of the authority. ’’ (Alcoholic Beverage Control Law, § 111.) This, of course, does not mean that the administrative agency involved may decide a particular case without a reasonable basis in the record. The rule has been stated in Matter of Fiore v. O’Connell (297 N. Y. 260, 262): “ It is settled that the courts will not disturb the exercise of administrative discretion vested in the State Liquor Authority by the Alcoholic Beverage Control Law unless the action complained of be deemed arbitrary or capricious.” The refusal *777 to allow relocation to a building which will be within the proscribed area can hardly be characterized as arbitrary or capricious. To insist blindly that the words of subdivision 3 of section 105 are the only yardstick by which the State Liquor Authority may measure a license removal application is a formalism inconsistent both with the stated purpose of section 2 of the Alcoholic Beverage Control Law and the specific section dealing with the scope of the license, section 111. It is impossible to deny that the Legislature had as its purpose the physical segregation of retail liquor stores from schools and churches. I cannot hold, on this record, that the respondents could not reasonably have come to the conclusion that, in the instant case, effectuation of this intent can best be accomplished by refusing permission to the petitioner to establish its liquor business at 300 West 153rd Street. (Cf. Matter of Feinberg v. Abrams, 208 Misc. 568, 569, and cases therein cited.) For it is clear from the record here that the neighborhood church was thought by the respondents — and not without basis in fact — to have been not merely a phantom hope; it was viewed as a substantial reality — although at the moment of the petitioner’s application, it was in prospect only.
I now pass to a consideration of the action of the respondents with respect to the petitioner’s application to transfer its license to the 113th Street address. The principal issue here is, Was the action of the State Liquor Authority unauthorized when it reconsidered its former decision (which had denied both the petitioner’s and another’s removal applications) and upon such reconsideration denied the request of the petitioner and granted the removal plea of the other party?
The petitioner objects that the respondents, on June 7-8, 1955, had already determined that public convenience and advantage would not be served by granting a license to open a retail package store on West 113th Street — due to the proximity of such retail liquor stores in that area — and yet, within eight days, the Authority determined, upon petitions for reconsideration, without new evidence or changed conditions, that public convenience and advantage would be served by granting a license to remove there. In considering this facet of the case, it must be observed as a factor of considerable importance that the petitioner alleges that there was no change whatsoever in any o'f the facts affecting the public convenience and advantage between June 9 and June 15-16,1955. The respondents expressly deny this allegation (Answer, Par. 1), but fail at this time to demonstrate in either the return, their affidavits, or in counsel’s *778 brief that any such change took place. And no newly discovered evidence on the precise issue is claimed to have come to the attention of the respondents — although on another phase of the controversy, they do point out that they had granted a waiver of rule 39 to Myrtle more than two months prior to the petitioner’s application.
The respondents rest their decision on what is termed a purely ministerial act, after a full and complete re-examination of all the pertinent papers, and that the petitioner itself had asked for reconsideration. Let me, at this point, say — as to the last argument — that I do not see much merit in the contention that, since the petitioner itself has asked for reconsideration, it cannot complain because reconsideration was granted at the request of Myrtle also, and then the final decision after both reconsiderations was in Myrtle’s favor. There was no waiver here by the petitioner insofar as its rights were affected by the Authority’s action on Myrtle’s application for reconsideration. At that posture, each licensee was on its own, and one did not appear in the proceeding as an adversary of the other. And, certainly, there was no waiver as to the propriety under the law and regulations of an impermissible change of mind by the respondents (if such it was) without basis therefor being in the record, without new evidence, without changed conditions, and absent antecedent judicial sanction.
As to whether the Authority’s decision was “ministerial” only, the respondents rely upon and quote at length from the case of Matter of Evans v. Monaghan (282 App. Div. 382, affd. 306 N. Y. 312) in which the Appellate Division (after holding that the police commissioner was not prevented from reopening a former decision on essentially the same charges of misconduct in office when a witness who had previously refused to testify changed his mind and testified at great length) remarked that “ [t] he general rule has been stated that while the doctrine of res judicata applies to a judicial determination of a board or officer, it does not apply ‘ to a decision made while acting ministerially or administratively.’ ” (282 App. Div. 389, supra.) As has been noted, the Court of Appeals affirmed (306 N. Y. 312, supra) but in so doing it pointed out that the testimony of the witness was similar to newly discovered evidence, and therefore within an exception to the doctrine of res judicata normally applicable in administrative law. Associate Judge Van Voobhis, writing for the Court of Appeals, rejected (or so it seems to me) the distinction suggested by the Appellate Division when he said (306 N. Y. 324, supra): “ Indeed, it is the instinct of our jurisprudence to extend court principles to *779 administrative or quasi-judicial hearings insofar as they may be adapted to such procedures. The opinion of this court written by Judge Pound in People ex rel. Finnegan v. McBride (226 N. Y. 252) indicates the restraint which is to be exercised in permitting reconsideration even in the case of purely administrative action, to say nothing of that which is ordinarily characterized as quasi-judicial. Any general relaxation of the rule of res judicata is inadmissible even in strictly administrative matters.”
Moreover, the respondents’ argument assumes that which is in issue, namely, whether their action was or was not ministerial. Without attempting here to analyze the confusion that is indigenous to or has been engendered by the distinction between ministerial and judicial action, it would seem to be clear that when it acted here the State Liquor Authority did not proceed or act merely as a ministerial agency devoted to purely routine tasks. Instead (and respondents have urged the point elsewhere in these proceedings) the Authority acted here, and is vested by statute, with discretion of the highest order. Under the law as it now is, no one has an inherent right to open or maintain a retail package liquor store (Alcoholic Beverage Control Law, §§ 17, 111). Indeed, it is reasonably certain that there are few licensed professions in the State of New' York where the administering authority has more nearly absolute power of rejection, provided that such action is not arbitrary or capricious. In view of the character and power of the body here involved, the statement of the Court of Appeals in Matter of Evans v. Monaghan (supra) is expressly applicable.
The reversal by the respondents in the instant situation seems to me to be at best merely a change of mind unsupported by new or additional evidence of any sort. (See Matter of Cupo v. McGoldrick, 278 App. Div. 108.) Such a reversal may be quite disturbing to the orderly processes of an administrative agency such as this, exercising important quasi-judicial functions, and, worse, it may subject the agency to loss of needed public confidence. The danger is all the greater when neither by statute nor by rule is reconsideration permitted and change of determination authorized. The remedy — if one is desired — is with the Legislature to enact a permissible statutory period of reconsideration, or perhaps with the State Liquor Authority if it deems it wise to promulgate a rule permitting for itself a reasonable period for reconsideration. (Cf. Matter of 609 Holding Corp. v. McGoldrick, 204 Misc. 26, 31.) On the other hand, it may well be the considered judgment of the Legislature and event of the Authority itself that change of determina *780 tion without prior judicial study may invite grave dangers to the due and proper conduct of the business of the administrative agency. Thus, I am of the view that the action of the respondents on this issue was erroneous as a matter of law. There being no period of reconsideration provided for in the statute or by rule — and while eight days might appear a short enough period to allow such reversal by the Authority — it would seem to me to be improper to establish that power now or to attempt to create a reasonable period by case-law decision.
The respondents urge that, in selecting Myrtle as the favored licensee for the 113th Street location, they considered that the petitioner had recently been licensed and was actually operating a place of business elsewhere, while, on the other hand, Myrtle had been doing business at the same location for a period of 18 years, was evicted under circumstances beyond its control and had been without any place of business for almost a year. Thus, it is contended by the Authority that the equities clearly favored Myrtle’s application, and that therefore it was that request which was approved, and that in consequence the Authority was required, under the provisions of subdivision 4 o'f section 105 of the Alcoholic Beverage Control Law, to disapprove the petitioner’s application. That decision would seem to be within the purview of the respondents’ power (Matter of Fiore v. O’Connell, 297 N. Y. 260, supra) — had that power been exercised and that decision made at the outset. The concern here is not with the final result, but with the change of decision, for what is now relied upon to sustain the result seems to have been present when the first (and contrary) decision was made.
While I am of the view that (under the existing law) reconsideration and change of decision by the respondents are not here permissible sua sponte — or even upon application of a third person — I am impressed with the thought that there is adequate traditional safeguard where there has been prior review of the administrative decision by the courts. Accordingly, even though I shall annul the determination of the respondents with respect to the 113th Street application of the petitioner, I shall not direct that its request in that regard be granted. Instead, the proceeding will be remitted to the State Liquor Authority for appropriate action on the facts. (Cf. Matter of Acker, Merrall & Condit Co. v. New York State Liq. Auth., 282 App. Div. 638, motion for leave to appeal denied 306 N. Y. 985.) There, the equities will be gone into, and all parties affected will be represented in the proceeding.
*781 The third question to be considered is that presented by the petitioner’s attempt to overcome the respondents’ holding that the newly requested location at 270 West 153rd Street could not be substituted by the petitioner for the initially proposed location at 300 West 153rd Street. When the petitioner notified the respondents on August 19,1955, that it had obtained an option to purchase property at 270 West 153rd Street which would overcome the objection of proximity to the proposed Bethany Baptist Church, did this constitute a new application which did not violate the provision of rule 39 of the Rules of the State Liquor Authority prohibiting the filing of removal applications during the period from May 1, 1955, to March 31, 1956, and except with the local board and except in cases of hardship? Or was this a continuation of the original proceeding, and, as such, is the petitioner therein entitled as a matter of right to have his license transferred to the new location if that location overcomes all the objections of the respondents to the former location,. 300 West 153rd Street?
If such an application were considered to be a new one before the Authority, then there is a manifest noncompliance by the petitioner with rule 39, since the application was not filed with the local board, and was filed during the prohibited period. In order to overcome this hurdle the petitioner attacks the validity of the rule, claiming that it is beyond the power conferred by statute and is therefore invalid as a matter of law. This contention is in my view quite baseless. The Legislature has passed laws empowering the Authority to issue or refuse to issue licenses (Alcoholic Beverage Control Law, § 17, subd. 1) and to say when a license may or may not be moved (Alcoholic Beverage Control, § 111) and in order that it may carry out such a mandate I hold that there is an implication that appropriate rules and regulations may be promulgated by the Authority (Alcoholic Beverage Control Law, § 2). It is plain to me that the Authority must in advance regulate when and where applications are to be filed and the manner of their processing. Express precise statutory permission for such purpose is, in my view, not needed.
If the agency’s rule is reasonable within the framework of the legislative mandate and purpose, it is not subject to judicial abrogation (Tropp v. Knickerbocker Vil., 205 Misc. 200, 211-212, affd. 284 App. Div. 935). I think that the rule now in issue is quite reasonable, and indeed some such regulation might well be deemed necessary. The reasonableness of the rule is indicated by what the petitioner has sought to do in This very case. It did not present an alternative proposal con *782 tained in its initial application, but an attempt was made to substitute a new location for the address previously applied for. The respondents were of the opinion that to grant petitioner’s request would unduly disrupt the orderly consideration of applications to remove licenses, would cause additional labors in investigation, and would by-pass the processing of such applications through the local board.
As regards the petitioner’s attempt to substitute a new location in order to remedy the defect upon which the Authority based its earlier decision of denial, I find that all the cases relied upon by the petitioner deal with the same premises, not new ones (Matter of Lyons v. O’Connell, 276 App. Div. 892, affd. 301 N. Y. 565; Matter of Moschini v. O’Connell, 197 Misc. 376, affd. 276 App. Div. 838). It seems clear to me that a later offer to substitute a new location calls for a determination de novo as to that location. This means that the petitioner (while ostensibly seeking to amend) in effect sought to file a new application. As to that new address, a new investigation would have to be made, and it could not be regarded in this aspect as a mere continuation of the investigation on the old application. Far from concluding that this administrative decision of the respondents not to permit the amendment was arbitrary, capricious or violative of law, I am of the opinion that it was reasonable and logical and in compliance with the applicable legislative law and the Authority’s regulations. I note that, in refusing to permit the petitioner to change the location specified on its application, the respondents did not pass upon the merits of the proposed new location. The petitioner may still apply to move to 270 West 153rd Street, pursuant to the provisions of rule 39.
These proceedings are disposed of as herein indicated, and orders should be settled accordingly.

 There is some dispute as to whether the proposed location is on the same or the opposite side of the street, but the fact either way would not affect the result of the proceedings before me.