J. Irwin Shapiro, J.
Application by petitioners landlords “ for an order pursuant to Article 78 of the Civil Practice Act vacating and setting aside the determination of the respondent *582 dated March 18, 1959 denying the application of petitioners for a Certificate of Eviction, and reviewing the determination of the respondent dated the 15th day of June, 1959, which determination is called ‘ Order and Opinion Denying Protest, ’ and directing the respondent to grant the application of petitioners and to issue a Certificate of Eviction permitting your petitioners to institute proceedings to recover possession of the accommodations on the second floor of premises 175-21 Jamaica Avenue, Jamaica, Queens, New York”.
The application for a certificate of eviction was filed pursuant to subdivision 1 of section 55 of the State Bent and Eviction Begulations which, so far as material, reads: “ A certificate shall be issued where the landlord seeks in good faith to recover possession of housing accommodations because of immediate and compelling necessity for his own personal use and occupancy or for the use and occupancy of his immediate family.”
It is thus seen that in order to obtain a certificate of eviction, one must establish two conditions, (1) that “ the landlord seeks in good faith to recover possession ” and (2) that there exists an “ immediate and compelling necessity ” for his use of the premises.
The record shows that the landlords seek the tenant’s apartment in this building which contains two dwelling units and one store alleging, among other things, that the husband is an auto mechanic; that the wife is a dressmaker; that they have two children, a boy 15% and a daughter 11 who attend school in Jamaica; that before the landlords purchased the building in which the subject apartment is located, the wife had a store a few blocks from her home; that in that location she was able to operate her business and take care of the house; that she was fo.rced to vacate her old store because the landlord sold the building; that she was unable to find any other store for rent, but was compelled to buy the present building; that at first, the children were left behind at home, but the landlords soon found out that this was a serious mistake because there was no one nearby to supervise them; that the children have to come from school to the store; that there are no cooking facilities in the back of the store; and, therefore, that they wait around all day until the husband picks them up, takes them home and prepares a meal for them; that it is eight o’clock before he can serve them a meal; that the landlords have tried to sell this building, for a number of years but they have been unsuccessful; that the husband is working, but he is suffering from arthritis; that his condition is getting steadily worse; that, therefore, the wife cannot give up her business; that in a short while the husband *583 will have to give up his job; that the landlords are not able to maintain two homes and that the landlords will have to sell their home in Ozone Park as soon as they get their rooms. The landlords’ family of four persons live in a six-room apartment, which they have occupied since 1944.
The tenant does not deny the foregoing, but alleges “ that the landlords have ample room for themselves and their children in their home; that when the landlords purchased this building, the apartment above the store was vacant for at least six months and available for occupancy by the landlords, but the landlords instead of occupying it themselves rented the apartment to another tenant.”
The contentions above set forth raised the issue for determination by the Local Administrator. He conducted a conference on March 17, 1959, at which the parties and the landlords’ attorney were present.
After the hearing, the Local Bent Administrator found that ‘ ‘ the tenant substantially reiterated her prior allegations ’ ’ and the landlords “ substantially reiterated their prior allegations and alleged, among other things, that the landlord-husband is still employed, although the doctor wants to put bim in a hospital; that the landlord is no longer planning to sell the subject building; that the landlord cannot offer the tenant their apartment in their present house because they plan to sell it. The landlord submitted an affidavit from a doctor who alleged, among other things, that her husband is, at present, fully disabled.”
On March 18, 1959, the Local Bent Administrator issued an order denying the application because the Local Bent Administrator: “ Finds that the landlord has failed to establish the existence of an immediate and compelling necessity as required by the Bent and Eviction Begulations. ’ ’
The landlords thereupon protested the Local Bent Administrator’s determination to the State Bent Administrator “ substantially reiterating their prior allegations.”
The acting State Bent Administrator determined ‘8 that the order of the Local Bent Administrator is proper and should be sustained” because “ the record indicates that the landlords’ family is adequately housed in their present accommodations ” and, therefore, ‘ ‘ there is no immediate and compelling necessity.”
It is obvious from the record that neither the Local Bent Administrator nor the acting State Bent Administrator disputed the “ good faith ” of the landlords in seeking possession. Thus, the first requirement of subdivision 1 of section 55 of the State *584 Rent and Eviction Regulations was met by the landlords. So, too, it is manifest from the entire record that neither the Local Rent Administrator nor the acting State Rent Administrator disbelieved the reasons given by the landlords for seeking a certificate of eviction and possession; on the contrary, they accepted them, but both held that no certificate of eviction could be issued on those accepted facts because, in the words of the Local Rent Administrator, such facts ‘ ‘ failed to establish the existence of an immediate and compelling necessity as required by the Rent and Eviction Regulations ” or, in the words of the acting State Rent Administrator, who, accepting the factual claims of the landlords, said that such claims evidence mere convenience and that ‘ ‘ convenience cannot take the place of immediate and compelling necessity.”
The words “immediate and compelling necessity” are not susceptible of precise definition. They are not rigid and immobile in meaning, but must be applied to situations as they arise in a manner that will be fair and reasonable and which will come within the spirit and intent of the regulations in which they are contained.
Though in the ordinary case which comes before the Rent Administrator or the courts, the “immediate and compelling necessity ” claimed is the inadequacy in space of the landlord’s existing accommodations (Matter of Belotti v. McGoldrick, 281 App. Div. 125, affd. 305 N. Y. 675) or his desire to get a ground-floor apartment instead of a walk-up for reasons of health (Matter of Cupo v. McGoldrick, 278 App. Div. 108) or for similar reasons, it does not follow that only those or similar instances constitute an “immediate and compelling necessity.” (See Matter of Gross v. McGoldrick, 283 App. Div. 1110, affd. 308 N. Y. 651, where the landlord’s application for a certificate of eviction was granted in order to provide an apartment for a resident janitor, and Matter of New York Univ. v. State Rent Comm., 304 N. Y. 124, where an eviction was granted in order to provide dormitories for university students.)
A necessity may be so immediate and compelling as to be of the utmost urgency without falling into any of the well-defined categories customarily coming before the Rent Administrator or the courts. We have here, I believe, one of those cases.
Accepting as a fact, as both the Local Rent Administrator and the State Rent Administrator apparently did, that there is an economic necessity for the wife to work (particularly in view of the undisputed fact that the husband’s illness, “ comprehensive osteoarthritis and hypertension ”, keeps him at times “fully disabled ”), and that the two children, a boy 15% years of age *585 and a daughter 11 “ who attended school in Jamaica ” near the mother’s store, if left to their own devices in the present home of the parties would have “ no one nearby to supervise them that if kept around the store “ there are no cooking facilities ” and that they must, therefore, ‘ ‘ wait around all day until the husband picks them up (after work) takes them home and prepares a meal for them ’ ’ and that under these circumstances “ it is eight o’clock before he can serve them a meal ”, it would seem that the conclusion arrived at by the State Bent Administrator is arbitrary and capricious and may not stand.
The tenant argued before the Administrator that when for the first six months in 1955, after the landlords had moved into the Jamaica store, there was a vacant apartment on the top floor, they rented it and did not attempt to occupy it themselves. Neither Administrator apparently accepted this contention by the tenant as showing any lack of good faith or the absence of an immediate and compelling necessity for in the summary and findings of the “ Bent Examiner ” and in his own handwriting, we find this contention fully answered by acceptance of the landlords’ statement that in 1955 they “ did not realize circumstances would be as they are now with respect to children and husband.”
In any event it appears without contradiction that after the mother opened her store in Jamaica and the children were left around the house, she found that it “was bad for the morale and morals of the children, who, though they had been previously well-behaved, began to get into trouble ” and that “ To correct this situation” the landlords “ resorted to two remedies; the first, to have the children come into the store after they came home from school and to keep them at or near the store until one of your petitioners could take them home, at which time they were given supper and retired. The second remedy was to put the building up for sale, not because the operation of the business was unsuccessful — as a matter of fact the business is a thriving success, so much so that the time your petitioner, Josephine Morales, is compelled to devote to it interferes with her duties as a housewife. The purpose of offering the building for sale was to enable your petitioners to get a location nearer to petitioners’ home where the children could receive proper supervision. Neither remedy has proven effective. The building has been up for sale for 3% years without a single promising prospect. It has been offered for sale through every broker in the vicinity. As regards the children, they are compelled to hang around the store from the time they get home from school until your petitioner, Georges Morales, comes home. He then has to take them home to South Ozone Park and start their *586 supper which is not ready for them much before 8:00 p.m. every day. The children, kept away from their friends, without any adequate place to stay or amuse themselves, are constantly getting into trouble.”
To argue that the existence of such conditions which can be alleviated by giving the landlords possession of the apartment in question does not make out an immediate and compelling necessity, would so inordinately restrict the usual and accepted meaning of those words as to reduce them to an absurdity.
Because the necessity in this case is due to the landlords’ economic conditions and their consequent necessity to run a dress shop in which the wife works not only during the day but frequently at night does not render it any less ‘ ‘ immediate and compelling.”
In these days when our newspapers and magazines are full of stories of the malicious and criminal acts of young delinquents, a desire of a mother to have her children near her where she can watch and properly supervise them, and see where they are and what they are doing, can be readily understood and if at all possible should be aided and not thwarted. Too many parents shirk these obligations. We have here parents who are understandably concerned about the changes for the worse in their children’s attitudes and outlook and want to do something about it. If the only thing that can be done — considering the economics of the situation — to have the family unit close together in the same premises where the store is — where the wife works — is to issue a certificate of eviction, then there is, indeed, an immediate and compelling necessity to see that that result is achieved.
There should be no magic about the meaning and interpretation of the words “immediate and compelling necessity.” Where the facts undeniably show, as they do in this case, that the welfare of the children and the proper maintenance of the family unit require that the owners be given possession of the premises which they seek, there is an immediate and compelling necessity and any determination to the contrary which disregards such a conclusion is arbitrary and capricious and may not stand.
For the reasons above stated, the order is annulled and the Bent Administration is directed to issue a certificate of eviction as requested.
Submit order.