In the Matter of TILLIE VENES, Respondent, v COMMUNITY SCHOOL BOARD OF DISTRICT 26 et al., Appellants.

Second Department, February 22, 1977

196

*W. Bernard Richland, Corporation Counsel (L. Kevin Sheridan* of counsel), for appellants.

*James R. Sandner (Thomas C. Greble* of counsel), for respondent.

COHALAN, J. This is an appeal from a judgment of the Special Term, Queens County, by which the petitioner was reinstated as a probationary school secretary retroactive to the date of her dismissal. The court based its decision on the principle of *res judicata* in administrative proceedings, in that by failing to obtain a majority vote to remove the petitioner on the first attempt to do so, a second vote taken a month later without any new evidence was held to be illegal (see *Matter of Evans v Monaghan,* 306 NY 312). We reverse, dismiss the petition and confirm the determination terminating petitioner's employment.

A recital of the facts is necessary in order to understand the problem.

Petitioner is a licensed school secretary. As such she is considered to be a pedagogical employee (i.e., a teacher) pursuant to the district by-laws.

On March 1, 1972 she was appointed by the Community

School Board of District 26 (CSB) for a five-year probationary period, and was assigned, on a split week basis, to two schools in the district, Public School 133 and Public School 173. In March, 1973 petitioner received unsatisfactory rating reports from the principals of both schools. About one month later, the community superintendent, Marvin Weingart, recommended her termination as a probationer.

Pursuant to section 105-a of the by-laws of the board of education, Mrs. Venes was accorded a probationary review proceeding, which was concluded on October 30, 1973. Her dismissal was approved by the appellant Chancellor on the recommendation of Mr. Weingart (see Education Law, § 2573, subd 1, par [a]).

The nine-member school board met on January 17, 1974 to consider, as part of its agenda, a resolution to discontinue Mrs. Venes' services. The board divided. Four voted for dismissal, three voted not to dismiss and two abstained. Before the vote, one member (William Caulfield) spoke to the question at the invitation of Chairman Dwyer. The minutes record the remarks in narrative form: "Mr. Caulfield requested that the CSB either vote 'no' or abstain so that either vote will *temporarily* retain the secretary's position as 'school secretary.' He informed the public that the secretary has in the past received a satisfactory rating for one year in this district, and another satisfactory rating previously in a high school. In addition, she has letters from educators complimenting her on other secretary jobs. The first year she was assigned to three different schools each week, and the second year to two different schools, where her problems began. Mr. Caulfield asked that she be assigned elsewhere for another probationary period and if she is not proven efficient, she will be discharged" (emphasis supplied).

The use by Mr. Caulfield of the word "temporarily" leads to the inference that he was merely trying to stave off the inevitable discharge of petitioner in the vain hope that she would mend her ways.

To this plea the Superintendent responded, as reflected in the minutes: "Mr. Weingart indicated that this secretary was given every opportunity to prove her competency before this decision was arrived at. In addition, she had been provided with every step of due process to which she and the Board were entitled. The hearings upon which this resolution was

based, had lasted one year; and the resolution is authorized by the Chancellor."

On February 21, 1974 the board held another public meeting. The Venes matter was one of 10 on the agenda.

When the resolution to discontinue petitioner's services was reintroduced, pursuant to section 2573 of the Education Law, the vote was recorded as seven for the motion, one opposed (Caulfield) and one absent. It was Dwyer who absented himself on the February 21 vote, having voted "no" on the first one.

The two members who had abstained on January 17 (Mr. Barry and Mrs. Goldman) now voted to discontinue the petitioner's services. They were joined by one other (Mrs. Zaro), who on the first occasion had voted against the proposal. The four who had voted to dismiss in January voted the same way at the February meeting.

Petitioner suggests that Mr. Barry and Mrs. Goldman changed their votes. They did nothing of the kind. They heeded Caulfield's suggestion that they vote "no" or abstain on the first vote; they chose the latter course, but voted their convictions on the February ballot. Thus, even without the switched vote of Mrs. Zaro, the February vote produced six for termination, one more than was needed for a majority vote to carry the resolution. Concededly, there was no change of the circumstances between the two dates; nor was petitioner prejudiced by the delay.

The January vote was inconclusive. It decided nothing. There was no majority either way. Had the resolution been worded the opposite way to read: "Resolved to continue [rather than discontinue] the probationary services of a school secretary in accordance with provisions of section 2573 of the State Education Law", it would have received only three votes for passage, four votes against and two abstentions. Would petitioner have considered that result sufficient to dispense with her services? We think not.

*Res judicata* is defined in Black's Law Dictionary (4th ed, p 1470) as: "A matter adjudged; a thing judicially acted upon or decided; a thing or matter settled by judgment."

The cases cited by petitioner can be readily distinguished. In each of them *(Matter of Evans v Monaghan,* 306 NY 312, *supra; People ex rel. Finnegan v McBride,* 226 NY 252; *Matter of Ess Pee Bee Realty Corp. v Gabel,* 16 NY2d 524; *Matter of Cupo v McGoldrick,* 278 App Div 108; *Matter of Willmont*

*Liqs. v Rohan,* 2 Misc 2d 768), a decision was made by an individual commissioner or by a majority (or more) of an administrative body. Independent research has failed to disclose any case treating an inconclusive vote as a matter finally settled.

Section 41 of the General Construction Law (Quorum and majority) notes, in part, that: "Whenever three or more public officers are given any power or authority, or three or more persons are charged with any public duty to be performed or exercised by them jointly or as a board or similar body, a majority of the whole number of such persons or officers * * * shall constitute a quorum and not less than a majority of the whole number may perform and exercise such power, authority or duty."

Much was made at Special Term and in petitioner's brief about the conclusive effect of a vote in administrative matters (see *Matter of Evans v Monaghan, supra).* That case arose out of an administrative proceeding in the New York City Police Department. The parties whose destinies were in the balance in that article 78 (Civ Prac Act) proceeding were tenured police officers. A second hearing was held there because, at the first, a necessary witness had refused to testify. He relented and did come forward on the second occasion. This was held to be a departure from the usual rule that *res judicata* applies to administrative hearings.

At bar we have a much different set of facts and circumstances. To begin with, the statute (Education Law, § 2573, subd 1, par [a]) reads, in pertinent part, that: "The service of a person appointed to any of such positions [teachers and all members of the teaching staff] may be discontinued *at any time* during such probationary period, on the recommendation of the superintendent of schools, by a majority vote of the board of education" (matter in brackets and emphasis supplied).

Even assuming, *arguendo,* therefore, that there was a binding vote on January 17, the board was at liberty to hold the second vote in February. It recognized its right to treat the matter *de novo* and, as the minutes indicate, it reintroduced rather than reconsidered the resolution to discontinue the services of petitioner. Having already afforded petitioner a section 105-a hearing, it would have been an act of supererogation to repeat it.

The important consideration is that Mrs. Venes, as a proba-

tioner, had no vested rights. Having been given her section 105-a hearing (of which more hereafter) she could be dismissed without cause (see *Matter of Butler v Allen,* 29 AD2d 799). There, Mr. Justice GIBSON wrote for a unanimous court in a proceeding involving a New York City school district, and observed (p 800): "Thus, appellant's main argument, as summarized by him, is that his 'procedural rights were violated'; but, of necessity, his basic complaint must be that he was dismissed, and, as an incident of his dismissal, denied tenure, without a formal hearing after preferment of charges (cf. *Matter of Pinto v Wynstra,* 22 A D 2d 914). Whatever the course of the 'interview' and the conduct of the procedures accorded him, whether gratuitously or otherwise, the ultimate issue is that of his dismissal and this was authorized, without restriction, 'at any time during [the] probationary period, on the recommendation of the superintendent of schools, by a majority vote of the board of education.' (Education Law, § 2573, subd. 1.) Nothing that occurred prior to that discontinuance of his service, and nothing in section 105-a of the By-Laws of the Board of Education, served to enlarge appellant's rights or to restrict the board's authority in respect of discretionary dismissal."

The clause "at any time" was included in the statute for good reason. As noted in Statutes (McKinney's Cons Laws of NY, Book 1, § 230, p 387): "The words and phrases used in a statute should be given the meaning intended by the lawmakers."

Section 94 of Statutes *(supra,* p 188) (Intent determined from language used; natural and obvious meaning) contains the statement: "The legislative intent is to be ascertained from the words and language used, and the statutory language is generally construed according to its natural and most obvious sense, without resorting to an artificial or forced construction."

Section 2573 of the Education Law says flatly "at any time". It does not say "at any time but only once". If it did it would not square with the probationary nature of petitioner's service. Other than a section 105-a hearing, she has no rights as a probationer under the Education Law which the board of education is bound to respect.

Special Term did not concern itself with the section 105-a hearing because it went no further than *res judicata.* However, it is discussed in the briefs and merits our attention.

As pertinent, section 105-a of the by-laws of the board of education provides that: "Any person in the employ of the Board of Education who is summoned to appear before the Superintendent of Schools or a committee designated by him, in respect of the discontinuance of service during the probationary term * * * shall receive written notice of the time and place of the meeting, mailed to the person so summoned at least one week before the date specified for the said meeting, and addressed either to the school or to his last-known post-office address, specifying the matter to be considered. The notice shall inform the said person that he is entitled to appear in person, to be accompanied and advised by an employee of the Board of Education, to be confronted by witnesses, to call witnesses and to introduce any relevant evidence. * * * The person thus summoned shall be entitled to examine exhibits and, in addition, shall be entitled to receive a duplicate of the sound recording discs or tapes of the proceeding, at cost."

A hearing pursuant to section 105-a was duly called for October 9, 1973. On that day all interested persons, including Superintendent Weingart, attended. At the request of petitioner, the hearing was adjourned until October 30, 1973. On the adjourned date petitioner's representative raised objection to the lack of documentation of certain of the charges. It was this alleged lack of documentation which had prompted the adjournment. Upon being shown a signed receipt by petitioner that she had received the documentation, the hearing proceeded.

When all of the delaying tactic objections raised by the petitioner's representative were cleared away—and he was captious and nit-picking throughout—Mrs. Venes was given an opportunity to make a complete statement in her own behalf.

She was given free rein to express herself. She spoke for a length of time sufficient for her remarks to cover 22 typewritten pages—double spaced—25 lines to a page—10 to 12 words per line. Not once was she interrupted. At the conclusion of her narrative, the chairman asked whether she had given her complete statement, to which she answered "Yes."

She was then confronted by the school principals and was given the opportunity to cross-examine them, an opportunity of which she availed herself.

Mention was made of Superintendent Weingart's absence at

the second meeting, although no request was made for an additional adjournment on that score. What he could have added to the testimony of the two principals is conjectural. He had little or no personal communication with the petitioner during her period of service. And, indeed, pursuant to section 105-a, she was free to call him as her witness if she was so inclined.

A reading of the record impels one to the conclusion that Mrs. Venes did not take kindly to authority. In her view everyone was out of step but herself. For the good of the school district her services should be terminated and dispensed with.

HOPKINS, Acting P. J., MARTUSCELLO and DAMIANI, JJ., concur.

Appeal from a judgment of the Supreme Court, Queens County, entered July 2, 1976, dismissed as academic, without costs or disbursements. The judgment was superseded by the order made on reargument.

Order of the same court, entered August 25, 1976, reversed insofar as reviewed, on the law, without costs or disbursements, determination confirmed and petition dismissed on the merits.