Matthew M. Levy, J.
The Vehicle and Traffic Law provides that an applicant for a license to operate a motor vehicle or any renewal thereof ‘ ‘ shall furnish such proof of his fitness as the [State] commissioner [of Motor Vehicles] shall in his discretion determine ”. (§ 20, subd. 1, par. a.) It also provides that the Commissioner 11 may refuse to issue or renew a license if he deems the applicant not qualified to receive ” it (subd. 5). And such a license may be revoked by the Commissioner “ because of the conviction of the holder at any time of a felony ’ ’ (§ 71, subd. 3, par. [e]). In any case, the determination of the Commissioner is reviewable by a proceeding in the Supreme Court in pursuance of article 78 of the Civil Practice Act (Vehicle and Traffic Law, § 20, subd. 1, par. a; § 71, subd. 6).
The petitioner, who had had an operator’s license for a number of years, applied for a renewal thereof. Such renewal was denied by the Commissioner, and the present is a proceeding, in pursuance of article 78 of the Civil Practice Act, to review such determination. The respondent has cross-moved to dismiss the petition for legal insufficiency on its face.* The case on its facts appears to be one of first impression.
Taking the material allegations of fact set forth by the petitioner at their face value, and examining the petition most favorably in its support — as I must on this motion (Matter of Hines v. State Bd. of Parole, 293 N. Y. 254, 258; Matter of Schwab v. McElligott, 282 N. Y. 182, 185-186; Matter of De Marco v. Conway, 273 App. Div. 626, 627; see, also, Harrison v. Winchell, 207 Misc. 275, 278; Mesiano v. Mazzeo, 12 Misc 2d 858, 859) —it is evident that the petitioner was denied a license on the ground that, as a leading functionary of the Communist party, he was convicted for violation of the Smith Act (U. S. Code, tit. 18, § 2385) in the United States District Court for the Southern District of New York and sentenced to a term of five years, that he was convicted and given a two months’ sentence for contempt of court in the United States District Court for the Western *956 District of Pennsylvania, and that he is employed by the Communist party.
While I do not agree with the Commissioner that it is obvious, from the face of the applicant’s petition, that the denial of a license here was justified as a matter of law, I cannot let my decision in the petitioner’s favor be deemed agreement with or approval of some of his arguments. The petitioner is not an unknowing ranlc-and-filer, caught in the wiles of the Communist snare (cf. Matter of Maynard v. Monaghan, 284 App. Div. 280). On the contrary, he was adjudicated to be in the top echelon of the Communist conspiracy in this country, advocating the overthrow of our democratic government by force and violence (Dennis v. United States, infra, 341 U. S. 494) — and not as a matter of abstract teaching or philosophic opinion, but as a matter of instigative effort to achieve action to that end (Yates v. United States, 354 U. S. 298, 312-327). And it is no secret that the aim of the conspiratorial apparatus of the Communist party is the establishment of a dictatorship, where civil rights, as we know them in a libertarian democracy, would not exist.
As so well put by Professor Sidney Hook: “ Heresy, Yes — Conspiracy, No.” Therefore, I cannot but discern a hollowness in the mien of injured innocence assumed by the petitioner, his seemingly anguished cry against the alleged totalitarian invasion of his civil rights, his claim that he was discriminated against because of his “ political opinion ”, his assertion that he was denied a license because of racial prejudice. All of these pleas bring to mind what has been described as perhaps “ the best summary of Leninist credo ”, given by the German Communist playwright, Bertold Brecht, in “ The Punitive Measure ”: “He who fights for communism must be able to fight and to renounce fighting, to say the truth and not to say the truth, to be helpful and unhelpful, to keep a promise and to break a promise, to go into danger and to avoid danger, to be known and to be unknown. He who fights for communism has of all the virtues only one: that he fights for communism.” (C. L. Sulzberger, “ Anniversary of a Fateful Journey ”, New York Times, April 16,1960, p. 16, col. 5.)
Nonetheless, in our democracy — where we are justly proud of the constitutional virtue that the end does not justify the means — I cannot sustain the respondent’s thesis. This judicial restraint may be called, as a pragmatic matter, one of freedom’s fetters. But, in my view, it is a basic tenet, and of major strength, in our way of life. I proceed, then, to an elucidation of my decision.
*957 The respondent argues that it appears from the petition itself that his determination as to the petitioner’s lack of “ fitness ” to drive an automobile is not arbitrary or capricious or in violation of law — the recognized requirement for upsetting the act of an administrative officer (Matter of Croft v. McGinnis, 24 Misc 2d 235; Matter of Committee of Tenants v. Herman, 21 Misc 2d 684, 686). In support of his motion to dismiss the petition, the respondent points first to the fact that the petitioner has been found guilty of a seditious conspiracy against the Government of the United States (Smith Act; U. S. Code, tit. 18, § 2385, supra). Were such a crime a !i felony ” under New York State law (as one may well believe should be the case; but cf. Pennsylvania v. Nelson, 350 U. S. 497), I would agree — and that would dispose of the application (Vehicle and Traffic Law, § 71, subd. 3, par. [c], supra). For I am not in the least impressed with the petitioner’s contention that this provision applies only where the license is sought to be suspended or revoked, and not where the issuance of a license or renewal thereof is involved. It seems plain to me that if the Commissioner may properly revoke a license upon a specified ground after issuance, he may, with equal right, refuse in the first instance to issue it upon that ground. It should not be, and is not, necessary for him first to issue and then to revoke.
Per contra, the difficulty with the respondent’s submission on this point is that the major Federal crime of which the petitioner was convicted — conspiracy (Dennis v. United States, 341 U. S. 494, supra) —is but a misdemeanor in New York State (Penal Law, § 580) and that the petitioner’s conviction for contempt in Pennsylvania is also not a felony under the law of this State (Penal Law, § 600). And it is well settled that a crime which is not a felony in New York may not be relied upon in New York as the basis for the imposition of penalties which may be prescribed for felons only (see Matter of Donegan, 282 N. Y. 285, where an attorney would have been automatically disbarred had he been convicted of a felony, and it was held that the Federal felony of conspiracy to use the mails to defraud was a misdemeanor under New York law, and that, therefore, there could be no ipso facto disbarment). Indeed, the respondent does not seriously dispute that the Federal crimes for which the present petitioner was convicted do not constitute felonies under the New York law, and that the petitioner’s admitted convictions do not come within the provisions of section 71 (subd. 3, par. [c]).
But it is the respondent’s further contention that the petitioner’s criminal character and Communist interests are such *958 that, in finding that the petitioner is not “fit” to operate a motor vehicle, the respondent properly exercised his permissible “ discretion ” within the meaning of section 20 (subd. 1, par. a), particularly since national security is involved in the petitioner’s past and present seditious conduct. In response, the petitioner presents several arguments.
The petitioner urges that ability to operate a vehicle is the sole criterion within the purview of that statutory “fitness ” of which the Commissioner must be satisfied. There is some inconsistency in the petitioner’s submission here, for he alleges in his petition, among other things, that he is a graduate of Amherst College and of Harvard Law School, that he is a member of the Bar of the State of Georgia, and that he was the second Negro elected to the City Council of the City of New York. Clearly, one may be physically or mentally unfit to operate a motor vehicle notwithstanding that he has an academic diploma and a law degree or that one is a lawyer and was a City Councilman or that he is of any particular race. These matters are quite irrelevant to, and as such have nothing to do with, the issues.
I hold that the expression used in the statute — that the applicant “ shall furnish such proof of his fitness as the Commissioner shall in his discretion determine” — implies more than only competence to operate a motor vehicle. It seems to me that, if the Legislature had intended that the term “ fitness ” meant merely “physical and mental capacity”, section 20 (subd. 1, par. a) would and could have been readily so worded, and there would have been no need to leave the matter of the determination of an applicant’s “ fitness ” to the “ discretion ” of the Commissioner, as distinguished from the mere administrative ascertainment of the fact as to whether the applicant had adequate knowledge and experience, and was thus able, to drive an automobile.
In Matter of Bernola v. Fletcher (280 App. Div. 870), too, there was refusal to issue an operator’s license. The opinion proceeds upon the fact that the refusal resulted from investigation as to the applicant’s fitness, pursuant to subdivision 5 of section 71 of the Vehicle and Traffic Law. The respondent found that the applicant had been convicted as a bookmaker, that he had avoided an additional conviction of book-making by testifying that he could not read or write, whereas he could, that he had been convicted also of reckless driving and of speeding, and that he was convicted of driving while his license was revoked, and that the applicant had failed to give full and true answers to questions appearing on application forms. The court held *959 (p. 870), in disagreement with the applicant’s contention, that the statutory authority vested in the Commissioner permits him to consider qualifications other than capacity to operate a motor vehicle. (See, also, Matter of Barton Trucking Corp. v. O’Connell, 7 N Y 2d 299, 308-309.)
On the other hand, even though the statute requires an applicant to furnish such proof of fitness ‘‘ as the commissioner shall in his discretion determine ’ ’, it does not follow, as urged by the Commissioner, that “ a driver’s license is not a right but a privilege ” and that “it is solely within the discretion of the Commissioner to grant or withhold it ”. (Cf. Tutun v. United States, 270 U. S. 568, 578; Matter of Winkle v. Adams, 4 Misc 2d 441, 447.)
Under modern conditions of locomotion and transportation, a ‘1 license to operate an automobile is of tremendous value to the individual and may not be taken away except by due process ” (Matter of Wignall v. Fletcher, 303 N. Y. 435, 441; Matter of Hecht v. Monaghan, 307 N. Y. 461, 467; Matter of Schutt v. Macduff, 205 Misc. 43, 53-54). I hold that the refusal to renew such a license is tantamount to “taking it away”. Unless, therefore, in the present context, one is not “ fit ” — within the meaning of the statute — to receive an operator’s license, it may not be denied him on the basis of the personal and unrestrained edict of the Commissioner. That, as I see it, is the situation here.
I recognize, of course, that the statutory requirement that an applicant for a license be a “ fit ” person to be a licensee, carries with it — here expressly, and, even if not that, at least by natural implication — a “ discretion ” on the part of the licensing officer to refuse to grant one (People ex rel. Schwab v. Grant, 126 N. Y. 473, 481). But such officer may not impose limitations not contained in the statute (Matter of Picone v. Commissioner of Licenses, 241 N. Y. 157,161).
The Legislature has enacted statutes affecting Communists as applicants for certain public occupations or as the recipients of certain public benefits. (See, e.g., Civil Service Law, § 105; see, also, Selective Training and Service Act of 1940, § 8, subd. [i], [54 U. S. Stat. 892] ; Emergency Relief Appropriation Act, fiscal year 1941, General and Special Provisions, § 15, subd. [f], [54 U. S. Stat. 620]; Immigration and Nationality Act, § 241, subd. [a], par. [6], cl. [C], subd. [i], [66 U. S. Stat. 205] ; Alien Registration Act, 1940, 54 U. S. Stat. 673; Federal Communist Control Act of 1954, [U. S. Code, tit. 50, § 841 et seq.].) But it has not deemed it necessary, advisable or appropriate to deny a Communist the right to operate a motor vehicle. In such circumstances — to say the least — the Commissioner may not, *960 on his own, declare policy in that respect. He may only apply the standards laid down in the statute (Matter of Small v. Moss, 279 N. Y. 288, 297), albeit they be set forth not expressly, but, by implication in the light of the statute’s history and purpose. (Matter of Small v. Moss, 279 N. Y. 288, 291, 292, supra’, 277 N. Y. 501, 512.) What those standards are in every case need not now be pointed out or judicially established. Suffice it to say that being a Communist — even a leading Communist conspirator— is not one of them. “ Laws are made by the lawmaking power and not by administrative officers acting solely on their own ideas of sound public policy, however excellent such ideas may be ” (Matter of Picone v. Commissioner of Licenses, 241 N. Y. 157,162, supra, quoted in Matter of Swalbach v. State Liquor Auth., 7 N Y 2d 518, 522).
The respondent’s cross motion to dismiss the petition for legal insufficiency is denied (Civ. Prac. Act, § 1293). An order has been signed and entered accordingly.

 It is not alleged in the petition that, at the time the applicant applied for the license, he was physically and mentally capable of operating a motor vehicle. Nor is it alleged that the application for such license was upon a blank prepared under the authority of the Commissioner, as specified by the statute (Vehicle and Traffic Law, § 20, subd. 1, par. a). But the Commissioner, on this motion, does not raise these issues, and the effect of the absence of such allegations in the petition will not now be considered.